

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5010 | **DATE** | 11/10/2003 |
| **CASE TITLE** | NORTH AMERICA PROMOTIONS vs. FICODESA, ET AL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  **Motion (4-1) to dismiss is granted. Enter memorandum opinion and order.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 17 2003 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | | 12 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | DW courtroom deputy's initials | 03 NOV 16 PM 2:23 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


DOCKETED
NOV 1 7 2003

NORTH AMERICA PROMOTIONS, LTD.,
an Illinois corporation,

    Plaintiff,

v.

FICODESA (MAGEFESA GROUP), a
Spanish corporation; COMPANIA
DEL MENAJE DOMESTICO S.L.;
MAGEFESA C, a Spanish corporation,

    Defendants.

No. 03 C 5010
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Intersolving, Inc. and plaintiff North America Promotions, Ltd. ("NAPL") were involved together in importing and selling cookware that was designed and manufactured by defendant Ficodesa (Magefesa Group), a Spanish corporation ("FMG"). In 1991, NAPL contracted with Intersolving to provide that company with management services, and then Intersolving contracted with FMG to serve as FMG's United States distributor for cookware. The two contracts, taken together, provided that FMG would indemnify Intersolving under certain circumstances, and that Intersolving would in turn indemnify NAPL. FMG representatives allegedly traveled to Illinois several times to negotiate the contract between FMG and Intersolving, and an FMG representative may have come again to execute the contract. Subsequently, Intersolving began to place regular orders with FMG for shipments of cookware, which FMG delivered directly to Intersolving in Illinois. Intersolving sold the cookware to customers in Illinois and elsewhere, and sent payment to FMG. An FMG representative also visited Illinois to assist in marketing the cookware.



In 1996, FMG instructed NAPL to sell off the cookware inventory of Intersolving in order to recover fees that Intersolving owed NAPL. NAPL did this, and in the process sold a pressure cooker which allegedly injured Simon Wan of New York. Wan then filed a lawsuit in New York state court against NAPL. The suit was eventually settled for $900,000.

NAPL has made a claim regarding that payment against FMG. In 1995, however, FMG declared bankruptcy and is still in bankruptcy proceedings in Spain. Accordingly, NAPL has joined in this lawsuit a Spanish corporation by the name of Compania Del Maneje Domestico S.L. ("CMD"), which it claims is the successor in interest to FMG because it is the same business operated prior to 1996 as FMG. From 1996 on, NAPL bought cookware products from CMD. These products were made in the same factory that had been operated by FMG and were shipped to Illinois from the same address in Spain. Also, the CMD employee with whom NAPL placed it orders for CMD's cookware is the same person to whom Intersolving had directed its orders for FMG's cookware. Furthermore, when NAPL's president visited CMD after 1996, he met with the same persons with whom he met when he previously had made similar visits to FMG at the same location and in his capacity as President of Intersolving. CMD currently represents in its Internet advertising that NAPL is CMD's United States distributor for its cookware and directs all inquiries from customers in the United States seeking to purchase its products to NAPL. CMD ships most of the cookware products that NAPL orders directly to NAPL's Illinois location, for resale to customers in Illinois and elsewhere. CMD has also contracted with NAPL to control the extent to which NAPL may use the "Magefesa" trademark.

In response to the above allegations by NAPL, CMD alleges that the factory that NAPL's president visited was owned and operated by a company called Industrias Domesticas, S.A.

("Indosa"). Manufacturas Generales de Ferreteria, S.A. ("Magefesa") licensed Indosa to produce goods under the Magefesa trademark. Indosa entered into a manufacturing contract with FMG. Indosa manufactured goods bearing the Magefesa trademark and supplied them to FMG, who in turn sold them to other companies, such as Intersolving. Indosa's relationship with FMG was strictly commercial and limited to this manufacturing contract. Indosa and FMG were separate, unrelated companies; they had no common ownership, officers, or directors. Furthermore, the employees which NAPL's president claimed worked for both FMG and CMD were actually employees of Indosa. In 1994, Indosa went into bankruptcy. In 1996, with the approval of Indosa's creditors and under the authority of the Spanish Judge overseeing the Indosa bankruptcy, certain Indosa assets, such as Indosa's factory, were transferred to CMD, a new, wholly independent corporation. CMD was subsequently given a license by Magefesa to produce goods under the Magefesa trademark.

CMD has moved to dismiss NAPL's complaint on four grounds: (1) that there is no justiciable claim in this case, Fed.R.Civ.P. 12(b)(1); (2) that this Court lacks personal jurisdiction over CMD, Fed.R.Civ.P. 12(b)(2); (3) that service of process was insufficient, Fed.R.Civ.P. 12(b)(4); and (3) that the Court should decline to exercise jurisdiction pursuant to the doctrine of *forum non conveniens*. In a motion to dismiss, NAPL's well-pleaded facts are taken as true, and all reasonable inferences are drawn in its favor. *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 782 (7th Cir. 1999). "A motion to dismiss will be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Europaper B.V. v. Integrated Material Mgmt. Serv., Inc.*, No. 01 C 211, 2003 WL 21688233, at *1 (N.D. Ill. Jul. 17, 2003) (omitting quotations). Because I find that dismissing

this case pursuant to the doctrine of *forum non conveniens* is appropriate, I do not address the first three bases for dismissal.[1]

As a general rule, there is a strong presumption in favor of a plaintiff's choice of forum. *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633 (7th Cir. 2003). When a plaintiff chooses a forum, it is normally reasonable to assume that the choice is convenient. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 718-19 (7th Cir. 2002). A *forum non conveniens* inquiry is a two-step analysis. *See*

---

[1] Were I to address these issues, I would find as follows. First, I would deny the Rule 12(b)(1) motion because I have granted a motion to substitute NAPL as plaintiff, thus mooting CMD's argument on this basis.

Regarding the Rule 12(b)(2) motion, I would find that specific jurisdiction exists because CMD has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that result out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985) (omitting quotations). Namely, FMG has had sufficient contacts with Illinois to sustain specific jurisdiction, and CMD may be the successor in interest to FMG. Regarding FMG's contacts, FMG representatives came to Illinois to negotiate the terms of the contract with Intersolving; executed the contract here; participated in marketing activities here; shipped products here; and received payment here. Under similar circumstances, Illinois courts have held that specific jurisdiction exists over foreign or out-of-state defendants. *See Allerion, Inc. v. Nueva Icacos, S.A. de S.V.*, 669 N.E.2d 1158 (Ill. App. Ct. 1996); *G.M. Signs, Inc. v. Kirn Signs, Inc.*, 596 N.E.2d 212 (Ill. App. Ct. 1992); *Capital Assoc. Dev. Corp. v. James E. Roberts-Ohbayashi Corp.*, 487 N.E.2d 7 (Ill. App. Ct. 1985). Second, NAPL has sufficiently pled that CMD may be the successor in interest to FMG. Successor liability may follow the purchase of assets: (1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations. *Green v. Firestone Tire & Rubber Co.*, 460 N.E.2d 895 (Ill. App. Ct. 1984). FMG and CMD allegedly shared some of the same personnel, cookware products, factory and office locations, the Magefesa brand name, and the same corporate history based on representations made by CMD on its website. On the other hand, CMD claims its and FMG's association and involvement with Indosa explain these similarities. Nonetheless, in light of the conflicts created by the sparse record on the successor in interest issue, I would resolve the issue in favor of NAPL because I must "resolve[] any conflicts in favor of the plaintiff." *Davis v. Howse*, No. 02 C 5549, 2003 WL 21317289, at *1 (N.D. Ill. Jun. 5, 2003) (omitted citations).

Regarding the Rule 12(b)(4) motion, I would find that service on CMD was properly accomplished pursuant to the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965 (Hague Service Convention), [1969] 20 U.S.T. 361, T.I.A.S. No. 6638. As a general rule, Illinois courts will not invalidate service of process because of minor defects in the form that do no affect the primary objectives of the process. *Charter Bank & Trust of Illinois v. Beverly Novak*, 578 N.E.2d 629 (Ill. App. Ct. 1991). Here, Intersolving – plaintiff prior to NAPL's substitution – successfully moved for a court order appointing Ace International Services, Inc. as a special process server. Upon learning that service in Spain could take as much as six months, Intersolving moved for and was granted a ninety day extension to accomplish service. As the ninety-day period passed with no indication that service had been accomplished, Intersolving moved for and was granted a second ninety day extension. During that period, Intersolving received two documents from the Spanish Ministry of Justice showing that service was completed on each of the defendants in a manner that satisfied Spanish authorities. And I am aware of no Illinois or Hague Convention requirement that an order extending the time for service must be given to the party served along with the summons. CMD's remainder arguments against service – raised in its reply, rather than its original motion – border on being farcical and need not consume my time.

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981). First, I must determine whether an adequate alternative forum is available; second, I must weigh several private and public interest factors related to the proper location for the litigation. *Coco*, 302 F.3d at 718. Private interests include the relative ease of access to sources of proof; availability of compulsory process for the attendance of unwilling witnesses; the possibility of viewing the premises, if necessary; and all other practical problems that make trial of the case easy, efficient and economical. *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 803 (7th Cir. 1997). Public factors include the administrative difficulties stemming from court congestion; the local interest in having localized disputes decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.*

*ISI International, Inc. v. Borden Ladner Gervais LLP*, 316 F.3d 731 (7th Cir.), *cert. den.*, 123 S.Ct. 2608 (2003), is particularly helpful with this case. In *ISI International*, a district court granted a *forum non conveniens* motion sending a case to Ontario, Canada. *Id.* at 732. Although the Seventh Circuit disagreed with the district court's conclusion that the private and public factors alone supported dismissing the case, the Court ultimately affirmed the dismissal of the case under *forum non conveniens*:

> [T]wo additional considerations lead us to conclude that the court did not abuse its discretion in relegating *ISI International* to the Canadian forum. First, Scott & Alyen no longer exists. . . . The parties dispute which among the entities, and who among the individual partners, is liable for Scott & Alyen's debts. The district judge was unable to resolve this question, the parties have not reached agreement on it, and an Ontario court may have to do so no matter what, if an effort is made to collect in Ontario any eventual

> judgment. If this aspect of the parties' dispute is going to land in Ontario no matter what, why not handle the whole suit there?

*Id.* at 732-33.

Here, CMD has identified Spain as an adequate alternative forum and pointed out several private and public interests that weigh in favor of this case being transferred to Spain. As in *ISI International*, "[n]one of these considerations so strongly supports the [Spanish] venue that the plaintiff's choice must be overridden," but an additional consideration leads me to conclude that relegating this case to a Spanish forum is appropriate, namely that this case may eventually wind up in Spain "no matter what." *Id.* at 732-33. As in *ISI International*, there is an issue in this case involving successor liability. In this case, however, any litigation involving the theory that CMD is the successor in interest to FMG – a company currently going through bankruptcy proceedings in Spain – would turn on Spanish law. Fed.R.Civ.P. 17(b) ("The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized."); *see, e.g, Binder v. Bristol-Myers Squibb, Co.*, 184 F.Supp.2d 762, 768-69 (N.D. Ill. 2001). And under Spanish law, all judgments against a company within bankruptcy must be included in the bankruptcy proceedings which produces the final order distributing the assets and discharging the claims. Therefore, if NAPL were to get a judgment against either FMG or CMD in the United States, it would likely be required to press its successor in interest claim before the Spanish tribunal handling FMG's bankruptcy proceedings. In other words, NAPL will have little choice but to appear in a Spanish courtroom. This inevitability along with the private and public factors discussed by CMD lead me to conclude that this case should be dismissed on the doctrine of *forum non conveniens*.

For the reasons above, CMD's *Forum Non Conveniens* Motion to Dismiss is GRANTED.

ENTER:

James B. Zagel
United States District Judge

DATE: 10 Nov 2003